[995 NYS2d 450]

Jonathan D. Nichols, Petitioner, v Rodney Emanuel Branton, Respondent.

Supreme Court, Columbia County, September 24, 2014

### APPEARANCES OF COUNSEL

*Jonathan D. Nichols*, Hudson, pro se, and *Eric T. Schneiderman, Attorney General*, Albany (*James B. McGowan* of counsel), for Jonathan D. Nichols, petitioner.

*Rodney E. Branton*, respondent pro se.

### OPINION OF THE COURT

RICHARD M. PLATKIN, J.

Petitioner Jonathan D. Nichols commenced this special proceeding pursuant to Uniform Commercial Code § 9-518 (d), seeking the following relief: (a) expungement of the financing statement filed by respondent Rodney E. Branton; (b) an injunction restraining respondent from filing any further UCC financing statements against petitioner without leave of court; and (c) an award of costs, including the statutory costs authorized by UCC 9-625 (e) (3). Respondent opposes the petition and alleges a "counter action" seeking, inter alia, his release from the Columbia County Jail, an order making him exempt from arrest in the future and entry of a $28 million judgment. Petitioner op-

poses the "counter action" and cross-moves for sanctions pursuant to 22 NYCRR 130-1.1. Respondent opposes the motion for sanctions.

Background

Jonathan D. Nichols is a Judge of the Columbia County Court. In that capacity, he presided over a felony indictment charging respondent Rodney E. Branton with two counts of criminal sale of a controlled substance (Sup Ct, Columbia County, Dec. 12, 2013, indictment No. 13-057). According to the verified petition, respondent made the following statement to Judge Nichols in open court: "Your Honor, just to let you know, I will be liening, putting a lien on it" (¶ 7). On May 14, 2014, respondent again referenced "the fact that [he has a] lien against [petitioner]" (*id.*). In connection with the pending criminal charges, respondent is committed to the custody of the Columbia County Jail.

Annexed to the petition is a UCC financing statement that identifies respondent as a secured party and "Johnathan D. Nichols" as debtor. The financing statement purports to encompass all of the personal property now held or hereinafter acquired by petitioner, including all houses, vehicles, bank accounts and safe deposit boxes, pursuant to a lien "claimed at a Sum Certain of 28 Million U.S. Dollars." The financing statement is dated March 3, 2014 and bears the signature of "Rodney Branton."

The petition alleges that the financing statement was falsely filed by respondent in retaliation for petitioner's performance of his judicial duties. Petitioner avers that the financing statement does not relate to an interest in an actual consumer or commercial transaction between the parties, and the covered collateral is the property of petitioner. According to petitioner, prompt invalidation of the financing statement is necessary to avert or mitigate prejudice.

In a "Response to Petition," respondent alleges that he is being held in the Columbia County Jail "against his will and without the written consent of the Secured Party as the authorized representative of the debtor RODNEY BRANTON" (¶ 2). In a portion of the pleading denominated a "Counter Action," respondent articulates the following basis for the claimed security interest and financing statement:

> "Petitioner JONATHAN D. NICHOLS, violated the security Agreement between the **Debtor** RODNEY BRANTON and the secured Party Rodney-E: Branton, the flesh and Blood man. The Respondent . . . has a security interest in the Debtor Being used in

the creation of indictment 13-057, the acquired property in which the Respondent has a continuation of security interest . . . . UCC § 9-315 (a) (1) provides that Respondent security interest in the **Debtor** RODNEY BRANTON, survive a disposition therefore by interloping Petitioner authorizes the filing of a financing statement. Indictment 13-057, is a commercial transaction used in a Liquidation Proceeding of the trust under law and equity. This Indictment is how the Law merchants or the State claimed its jurisdiction in doing commercial transactions in the name of RODNEY BRANTON. . . . The Respondent filed with the Secretary of the state of New York an amendment Making Indictment / SCI No. 13-057 his property and therefore has a security interest in Indictment 13-057. . . . The Legally binding Security Agreement between RODNEY BRANTON, party to the first part, and Rodney-E: Branton, party to the second part gives the Secured Party the authority to file a lien under Article 9 of the Uniform Commercial code" (¶ 3).

Respondent submits a copy of the alleged security agreement executed by Rodney Emanuel Branton, as debtor, and Rodney-Emanuel: Branton, as secured party.

Respondent maintains that upon the filing of the indictment against him, petitioner became "bound by the security agreement already in place due to Rodney-E: Branton Having a security interest in the Debtor RODNEY BRANTON, being used in the Indictment" (¶ 5). Respondent further alleges that the financing statement "was filed for [petitioner's] failure to perform a Contractual obligation by going beyond his jurisdiction" (¶ 8). On the basis of the foregoing allegations, respondent seeks his release from jail, removal of his criminal history, an order making him now and forever exempt from arrest or imprisonment, the posting of a $50 million bond and a money judgment against petitioner in the amount of $28 million.

In a reply, petitioner asserts that respondent has failed to state any legally cognizable defense or counterclaim to the petition. "The Petitioner is not a party to, not a signatory to, nor has ever adopted in any manner, the purported security agreement submitted by the Respondent" (¶ 10). Petitioner further argues that the alleged security agreement is not valid under UCC 9-102, respondent has no cognizable security interest as to petitioner or his property, and petitioner is not a debtor of re-

spondent and has not pledged any collateral in favor of respondent. Petitioner also requests an award of monetary sanctions pursuant to 22 NYCRR 130-1.1 based upon respondent's "frivolous conduct in filing the financing statement which necessitated this special proceeding to expunge the same" (¶ 18).

The Office of the Attorney General has appeared in defense of petitioner in the "counter action." In addition to emphasizing the fraudulent nature of the "imaginary financing statement[ ] using the artifice of a self-made strawman as debtor to himself" (affirmation of James B. McGowan ¶ 5), the Attorney General's Office cross-moves for sanctions in the sum of $2,500, representing the reasonable attorney's fees incurred in responding to the "counter action."

In his "Counter Action Reply," respondent reiterates his claim that petitioner violated the above-referenced security agreement, thereby authorizing the filing of the financing statement under UCC article 9.

Analysis

This is a special proceeding brought pursuant to UCC 9-518 (d), a measure enacted in 2013 at the request of the Chief Administrative Judge. The new legislation is intended to address the "growing and pernicious practice" of "the retaliatory filing of false financing statements under the uniform commercial code . . . against New Yorkers in public service and private service" (L 2013, ch 490, § 1 [legislative findings]).[1]

UCC 9-518 (d) establishes a judicial procedure for the summary invalidation of fraudulent, retaliatory liens. An employee of the State or a political subdivision identified as a debtor in a financing statement filed pursuant to UCC article 9 may commence a special proceeding against the named filer to invalidate

---

1. Chapter 490 also amended Penal Law § 175.35 to make it a class E felony offense to commit the existing class A misdemeanor offense of offering a false instrument for filing in the second degree through the knowing filing of a fraudulent UCC financing statement that identifies the debtor as a public official where the fraudulent filing is made in retaliation for the performance of the official's official duties (L 2013, ch 490, § 3). In addition, chapter 490 amended Judiciary Law § 212 to authorize the Chief Administrative Judge to establish rules for special proceedings brought pursuant to UCC 9-518 (d) (id. § 2). Pursuant to that authority, the Chief Administrative Judge promulgated a new section 202.9-a of the Uniform Rules for Trial Courts (22 NYCRR) on April 9, 2014.

the statement as falsely filed (UCC 9-518 [d] [1]).[2] The proceeding may be commenced in Albany County, the county of the petitioner's residence or a county within the judicial district in which any property covered by the financing statement is located (*id.*).

The petition in such a proceeding shall plead that: (a) the financing statement was falsely filed or amended to retaliate for the performance of the petitioner's duties as a public officer or as an attorney for the respondent in criminal court; (b) the financing statement does not relate to an interest in a consumer-goods transaction, a commercial transaction or any other actual transaction between the petitioner and the respondent; (c) the covered collateral is the property of the petitioner; and (d) prompt redaction or invalidation of the financing statement is necessary to avert or mitigate prejudice to the petitioner (*id.* [d] [2]).

Upon a finding that the foregoing elements have been established, "the court shall order the expungement of such statement or its redaction in the public records in the office in which the financing statement is filed, as appropriate, and may grant any additional relief authorized by [UCC 9-625]" (*id.* [d] [3]). Where "the respondent has engaged in a repeated pattern of false filings . . . , the court also may enjoin the respondent from filing or amending any further financing statement pursuant to this article without leave of the court" (*id.*).

As stated above, the petition alleges the elements required under UCC 9-518 (d) (2) for expungement of the financing statement as falsely filed in retaliation for the performance of petitioner's judicial duties. The burden therefore shifts to respondent to raise a triable issue of fact or legal defense to the petition (*see* CPLR 409 [b]). This he has failed to do.

For purposes of UCC article 9, a "security agreement" is "an agreement that creates or provides for a security interest" (UCC 9-102 [a] [73]), and a "secured party" is "a person in whose favor a security interest is created or provided for under a security agreement" (*id.* [a] [72] [A]). " 'Collateral' means the property subject to a security interest" (*id.* [a] [12]), and a "debtor" is "a person having an interest, other than a security interest or other lien, in the collateral" (*id.* [a] [28] [A]).

Petitioner is not a party to the purported security agreement, which was executed by respondent both as "Debtor" and

---

**2.** In addition, relief also is available to an attorney who has represented the filer in criminal court (*id.*).

"Secured Party." Nor is there proof that petitioner ever assented to this so-called "Agreement." In the absence of a valid security agreement between the parties, petitioner's personal property is not "collateral," and respondent is not a "secured party." Further, the purported security agreement does not relate to an actual transaction between the parties. Indeed, respondent acknowledges that the financing statement arises directly out of petitioner's performance of his judicial duties in relation to respondent's criminal prosecution—a matter that is not a "commercial transaction" or one that implicates a private contractual obligation.

■ Based on the foregoing, the court finds and determines that: the financing statement was falsely filed to retaliate for the performance of petitioner's judicial duties; the financing statement does not relate to an interest in a consumer transaction, a commercial transaction, or any other actual transaction between the parties; the alleged collateral is the property of the petitioner; and prompt invalidation of the financing statement is necessary to avert continuing prejudice to petitioner.

Having determined that the allegations of the petition have been established, petitioner is entitled to an order directing the Department of State to expunge the fraudulent financing statement (see UCC 9-518 [d] [3]). In addition, the court is authorized to grant "any additional relief authorized by [UCC 9-625]" (id.). Based upon the fraudulent and abusive nature of respondent's conduct, the court exercises its discretion to award petitioner full statutory damages of $500, plus any costs or disbursements incurred in the prosecution of this special proceeding and in defense of the "counter action."

■ However, the request for an injunction barring respondent from filing or amending any further financing statements against petitioner without leave of court is denied, as there is no proof in the record that "respondent has engaged in a repeated pattern of false [UCC] filings" (UCC 9-518 [d] [3]). Petitioner's informal request for an award of sanctions pursuant to 22 NYCRR 130-1.1 also is denied. The frivolous conduct cited by petitioner in his reply pertains to respondent's pre-litigation conduct in filing the fraudulent financing statement, rather than his conduct within this special proceeding (see reply ¶ 18).

The court reaches a different conclusion with respect to the cross motion for sanctions filed by the Office of the Attorney General. Respondent has affirmatively invoked this court's ju-

risdiction by alleging a "counter action" seeking monetary damages and injunctive relief against petitioner. For the reasons stated above, the "counter action" is "completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law," it was undertaken to "harass or maliciously injure" petitioner in retaliation for the performance of his judicial duties, and the pleading "asserts material factual statements that are false" (22 NYCRR 130-1.1 [c] [1]-[3]).

Through the affirmation of Assistant Attorney General James B. McGowan, the Attorney General's Office has established that it reasonably spent at least 10 hours of attorney time defending against the frivolous "counter action," and the requested rate of $250 per hour is reasonable for an experienced litigator in this area. Accordingly, the cross motion for sanctions is granted in all respects.

Conclusion

Accordingly,[3] it is ordered and adjudged that the verified petition is granted in accordance with the foregoing; and it is further ordered and adjudged that the "counter action" is dismissed; and it is further ordered that petitioner shall cause a copy of this decision, order and judgment with notice of entry to be served upon and filed with the New York Secretary of State; and it is further ordered that upon such service and filing, the New York Secretary of State and the New York State Department of State shall forthwith expunge from the public record the UCC financing statement dated March 3, 2014 (bearing a date stamp of Mar. 10, 2014 and filing number 201403100126585), which names "Johnathan D. Nichols" as debtor and "Rodney-Emanuel: Branton" as secured party; and it is further ordered that the Columbia County Clerk is directed to enter a money judgment in favor of petitioner and against respondent in the sum of $500, together with costs and disbursements; and it is further ordered that the cross motion for sanctions is granted in all respects; and finally it is ordered that the Columbia County Clerk is directed to enter a money judgment in favor of the State of New York and against respondent in the sum of $2,500.

---

**3.** The court has considered respondent's remaining arguments and contentions, but finds them to be without merit.